J-S22003-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :        PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| JOHN GORDON | : |
| | : |
| Appellant | : No. 1194 EDA 2025 |

Appeal from the PCRA Order Entered April 4, 2025
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0006008-2011

BEFORE: PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.: **FILED JULY 1, 2026**

John Gordon appeals from the order dismissing his petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Gordon asserts the court erred in failing to find his trial counsel was ineffective and in dismissing his two **Brady**[1] claims. After careful review, we affirm.

We obtained the following factual and procedural history from the certified record.

On July 18, 2011, Randy Campbell was shot and killed outside an after-hours club in Delaware County, Pennsylvania. Through investigation, police identified Gordon as the shooter and issued a warrant for his arrest. Gordon

_____

[1] **Brady v. Maryland**, 373 U.S. 83 (1963).

was charged with first-degree murder, third-degree murder, and persons not to possess firearms.[2] The Commonwealth filed a notice of aggravating circumstances on November 17, 2011, indicating it was seeking the death penalty. On September 10, 2015, the parties informed the court that they came to agreement where Gordon would waive his right to a jury trial in exchange for the Commonwealth not seeking the death penalty. On September 23, 2015, the court conducted a thorough colloquy with Gordon and found his waiver of his right to a jury trial voluntarily, intelligently, and knowingly entered.

A bifurcated bench trial was held, beginning on September 23, 2015, immediately after Gordon's colloquy. Trial continued on October 5, 2015, through October 8, 2015. The court took the matter under advisement and all parties returned to court on October 15, 2015, for its verdict. The court found Gordon guilty of first-degree murder and persons not to possess firearms. The court ordered a pre-sentence investigation and scheduled sentencing for December 4, 2015. The court sentenced Gordon to life imprisonment without the possibility of parole and a concurrent five to ten years of incarceration.

Gordon filed a timely post-sentence motion and, after it was denied, a notice of appeal to this Court. This Court affirmed the judgment of sentence on August 14, 2017. **See Commonwealth v. Gordon**, 1088 EDA 2016 (Pa.

_____

[2] 18 Pa.C.S.A. §§ 2502(a), 2502(c), and 6105, respectively.

Super. filed Aug. 14, 2017) (unpublished memorandum). The Supreme Court of Pennsylvania denied Gordon's petition for allowance of appeal on March 13, 2018. **See Commonwealth v. Gordon**, 182 A.3d 447 (Pa. 2018).

On May 13, 2019, Gordon filed a timely *pro se* PCRA petition. The court appointed counsel who sought multiple extensions of time to file a supplemental PCRA petition. Gordon then hired private counsel, who entered his appearance on October 27, 2020. Co-counsel entered her appearance on May 9, 2022. The court, throughout this time, granted multiple extensions of time to file a supplemental PCRA petition.

On February 15, 2023, Gordon filed, through counsel, an amended PCRA petition. The Commonwealth eventually filed a responsive pleading which requested the court to dismiss the PCRA petition without a hearing. Gordon responded to the Commonwealth's response and further sought leave of court to amend his PCRA petition.

On December 29, 2023, the court entered an order granting leave to amend and issued a partial notice of intent to dismiss the PCRA petition without a hearing. The court noted that Gordon failed to comply with multiple rules regarding the filing of a PCRA petition, including, but not limited to, failing to attach Gordon's verification and a signed affidavit or certification of the planned testimony of any witnesses at an evidentiary hearing. **See** Pa.R.Crim.P. 901(B), 902(A)(14), (D). However, the court granted Gordon leave to fix these deficiencies and noted it would schedule a hearing on some

claims if the issues were fixed. The court further dismissed Gordon's **Brady** claims without a hearing, finding that both claims were waived because Gordon could have raised them before, during, and after trial but they were not raised at that time. The court found that Gordon was aware of the information prior to trial and as such, no new information was alleged in the PCRA petition, and it was merely cumulative of what was presented at trial.

Gordon filed a response on January 22, 2024, correcting some of the errors in his petition, and seeking discovery of the following: the name of the person who told police that a shooter dropped a red cap near the scene of the shooting, the grand jury testimony of eyewitness Lori Santos, and information regarding whether there was a deal with Commonwealth witness Shakeria Pinnock. The court granted the request for discovery and scheduled an evidentiary hearing. In response, the Commonwealth informed the court it had searched its files, which contained no identifying information on the individual who directed the police to the red cap, and were unclear about whether Santos ever testified before the grand jury. However, the Commonwealth turned over discovery in the form of communications and U-Visa applications between the Commonwealth and Shakeria Pinnock's immigration attorney.

At the evidentiary hearing held June 21, 2024, Gordon and his two trial counsel testified. Relevant to the issues raised in Gordon's brief, trial counsel Coley Reynolds testified that he spoke to Gordon about the fact that very few

people were recently put to death on death row; that death row was still a horrible place to live; that he had subpoenaed witness Laurie Santos, but decided not to call her as a witness due to her inconsistent statements; that the 911 call Laurie Santos made was the better evidence and it was played for the trial court and admitted as an exhibit; and that he did cross-examine Shakeria Pinnock regarding her immigration status and may have had only one letter regarding the U-Visa she applied for but did not have the actual U-Visa applications found by PCRA counsel in the district attorney's file. Trial counsel William Wismer testified that he told Gordon death row is a bad place to be even though no one has been put to death recently; he discussed with Gordon how infrequently the death penalty is actually carried out; told Gordon that there had not been any involuntary executions in Pennsylvania in years; and that the governor was not signing death warrants. Gordon testified that he did not know the governor had signed a moratorium on the death penalty prior to his waiver of his right to a jury trial and if he knew about the moratorium, he would have proceeded to a jury trial.

At the conclusion of the hearing, the court took the matter under advisement. Prior to the court issuing its decision, Gordon sought either a stipulation from the Commonwealth that it did not disclose the U-Visa and other communications with Pinnock's immigration attorney prior to trial, or another evidentiary hearing to present the assigned district attorney who prosecuted the case at trial. The Commonwealth declined to enter into a

stipulation, and Gordon requested the court schedule another hearing. Instead of an evidentiary hearing, the court scheduled oral argument to permit Gordon to argue "whether [the court should] continue to deny or reconsider the alleged *Brady* violation[.]" Order, 8/15/24, at 2. At the conclusion of the oral argument held on October 4, 2024, the court took the matter under advisement.

On April 4, 2025, the court entered its order and opinion dismissing Gordon's PCRA petition. Gordon filed a timely notice of appeal and complied with the court's order to file a Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b). On October 20, 2025, the PCRA court authored its Rule 1925(a) opinion. *See* Pa.R.A.P. 1925(a). This matter is now ripe for our review.

Gordon raises the following claims for our review:

I. Whether the PCRA court erred as a matter of law and/or abused its discretion in denying [Gordon's] request for post-conviction relief in finding that [Gordon's] waiver of his right to a jury trial in exchange for the Commonwealth's withdrawal of its death penalty certification was made intelligently, knowingly, and voluntarily even though trial counsel failed to inform [Gordon] of the gubernatorial death penalty moratorium?

II. Whether the PCRA court erred as a matter of law and/or abused its discretion in denying [Gordon's] request for post-conviction relief in finding that trial counsels' failure to call Ms. Laurie Santos as a defense witness at the trial did not meet the legal standards for ineffective assistance of counsel?

III. Whether the PCRA court erred as a matter of law and/or abused its discretion in denying [Gordon's] request for post-conviction relief in finding that trial counsel's examination of Commonwealth witness Shaker[i]a Pinnock met the threshold for effective assistance of counsel?

IV. Whether the PCRA court erred as a matter of law and/or abused its discretion in denying [Gordon's] request for post-conviction relief in declining to grant an evidentiary hearing with respect to the below-listed **Brady v. Maryland** claims?

> a. The Commonwealth failed to disclose the name of the witness who reported seeing the shooter drop a red baseball cap in a parking lot near the crime scene; and

> b. The Commonwealth suppressed U-VISA application documents, which if made available to [Gordon] and the trial court, would have yielded a different outcome.

Appellant's Brief, at 5 (suggested answers omitted).

We begin with our well-established standard and scope of review:

On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. We review questions of law *de novo*, and our scope of review is limited to the PCRA court's findings and the evidence of record, viewed in the light most favorable to the Commonwealth as the prevailing party.

**Commonwealth v. Johnson**, 353 A.3d 609, 627 (Pa. 2026) (footnotes omitted).

Furthermore, "[t]he PCRA court's credibility determinations, when supported by the record, are binding on this Court." **Commonwealth v. Spotz**, 18 A.3d 244, 259 (Pa. 2011) (citation omitted).

Gordon's first three claims assert his two trial counsel were ineffective:

It is well-settled that counsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness. To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered

prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different. A PCRA petitioner must address each of these prongs on appeal. A petitioner's failure to satisfy any prong of this test is fatal to the claim.

*Commonwealth v. Smith*, 352 A.3d 111, 116 (Pa. 2026) (citations and quotation marks omitted).

"With regard to the second, *i.e.*, the reasonable basis prong, we will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Spotz*, 18 A.3d at 260 (citation and internal quotation marks omitted).

Gordon first argues counsel was ineffective for failing to inform him of the gubernatorial death penalty moratorium. *See* Appellant's Brief, at 17. He alleges this failure interfered with his ability to make an informed decision, thereby causing his waiver to not be voluntarily, intelligently, and knowingly entered. *See id.*

The Commonwealth points out that counsel and the court conducted a thorough colloquy with Gordon regarding his waiver of his right to a jury trial. *See* Appellee's Brief, at 21. Further, the Commonwealth points to both trial counsels' testimony at the PCRA evidentiary hearing wherein they stated that they each had conversations with Gordon regarding how infrequently the death penalty had been carried out in Pennsylvania. *See id.* at 22-23. This advice, the Commonwealth asserts, was constitutionally adequate and counsel

were not required to advise Gordon of the moratorium in addition to the advice they gave. *See id.* at 23-24. Finally, the Commonwealth notes that the PCRA court found Gordon's testimony "wholly disingenuous" and not credible. *See id.* at 25 (quoting PCRA Court Opinion, 10/20/25, at 63).

The PCRA court found this claim lacked arguable merit. *See* PCRA Court Opinion, 10/20/25, at 60. As the court noted: "In particular, both parties acknowledged that the court's on-the-record jury trial waiver colloquy 'covered all of the required topics for a valid waiver of the right to a jury trial.'" *See id.* (quoting Gordon's PCRA petition, 2/13/23, at 10). Notably, the PCRA court found Gordon lacked credibility in his PCRA hearing testimony. *See id.* at 63. The PCRA court further found counsels' advise to Gordon to waive his right to a jury trial to remove the possibility of the death penalty reasonably designed to effectuate Gordon's interests. *See id.* at 62. We agree with both the Commonwealth and PCRA court.

> Our Supreme Court has held:
>
> A valid waiver of the right to a jury trial must contain evidence that the accused understood the fundamental essentials of a jury trial which are: 1) that the jury be chosen from members of the community (*i.e.*, a jury of one's peers), 2) that the accused be allowed to participate in the selection of the jury panel, and 3) that the verdict be unanimous.

*Commonwealth v. Miller*, 987 A.2d 638, 660 (Pa. 2009) (quotation marks and citation omitted).

A thorough colloquy was conducted on the record on September 23, 2015. *See* N.T. Hearing, 9/23/15, at 4-29. Gordon acknowledged his

awareness that the jury would be chosen from members of the community, that he would be allowed to participate in selection of the panel, and that the verdict must be unanimous. ***See id.*** at 7-11. The colloquy conducted was therefore constitutionally valid and Gordon's resultant waiver of his right to a jury trial was knowingly, voluntarily, and intelligently entered.

Gordon's claim that he could not have knowingly, voluntarily, and intelligently waived his right to a jury trial without knowing of the moratorium is without merit. While both trial counsel testified at the PCRA hearing that they did not use the word moratorium in discussing the death penalty with Gordon, they did explain to Gordon that the governor was not signing death warrants and no one had recently been put to death in Pennsylvania. ***See*** N.T. PCRA Hearing, 6/21/24, at 21, 23-24, 33-34, 41, 43, 45, 147-50. Gordon certainly had enough information prior to his waiver to decide if he wanted to risk the death penalty by proceeding to a jury trial. Counsels' performance was constitutionally effective and did not interfere with Gordon's decision whether or not to waive his right to a jury trial.

Next, Gordon asserts counsel was ineffective for failing to call Laurie Santos as a witness at trial. ***See*** Appellant's Brief, at 19-20. Gordon claims that Santos would have given a description of the shooter that was "inconsistent with [Gordon] and consistent with the defense theory of misidentification." ***Id.*** at 20.

The Commonwealth argues that Santos was never called as a witness at the PCRA hearing, therefore, Gordon was unable to prove that the lack of her testimony at trial was prejudicial. *See* Appellee's Brief, at 28. Further, the Commonwealth asserts that "the best, uncontradicted part of any known testimony that could have been provided by Ms. Santos [on Gordon's behalf] was already in the trial record and considered by the finder of fact." *Id.* This testimony came in through the 911 call that Santos made right after the shooting. *See id.* On the 911 call, which was admitted at trial and played for the court, Santos gave a description of the shooter that did not match Gordon. *See id.* at 28-29. Finally, the Commonwealth submits that counsel's decision not to call Santos as a witness was reasonably designed to effectuate Gordon's interests because counsel did subpoena Santos for trial, interviewed her, and found her to be inconsistent in her statements. *See id.* at 29-30.

The PCRA court held:

… Gordon's trial attorney had an eminently reasonable explanation for not calling Ms. Santos as a witness. As he recounted, in his interviews with Ms. Santos there were inconsistencies with what she was telling him versus what she reported on the 911 tape on the night of the incident. The 911 tape not being subject to damaging cross-examination was just better for the defense and the trial prosecutor was willing to stipulate to the recording and its contents.

[Gordon's] trial counsel relatedly explained the one additional "fact" as to the height of the reported suspect that Ms. Santos allegedly added in a redacted statement to a private investigator was not worth introducing her testimony otherwise given the various additional inconsistencies which would have contradicted what was understandably deemed to be the extremely helpful and agreed to 911 tape. This reasoned decision was made only after

[Attorney] Reynolds conferred with co-counsel [Attorney] Wismer and again spoke with Ms. Santos in the hallway behind the courtroom. Of course, the pure hearsay private investigator's report cannot support the contention that trial counsel was ineffective in failing to present Ms. Santos' testimony.

… Gordon on such a record simply failed to establish that the decision not to present Ms. Santos at trial as a defense witness lacked a rational basis and/or occasioned him to suffer prejudice in that on the relevant record there is simply no reasonable probability [that] had Ms. Santos been called to the stand and testified the trial's outcome would have been different. …

PCRA Court Opinion, 10/20/25, at 66-67 (citations and record citations omitted). We find no error in the PCRA court's analysis.

Our Pennsylvania Supreme Court has held:

There are two requirements for relief on an ineffectiveness claim for a failure to present witness testimony. The first requirement is procedural. The PCRA requires that, to be entitled to an evidentiary hearing, a petitioner must include in his PCRA petition a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony. The second requirement is substantive. Specifically, when raising a claim for the failure to call a potential witness, to obtain relief, a petitioner must establish that: (1) the witness existed; (2) the witness was available; (3) counsel was informed or should have known of the existence of the witness; (4) the witness was prepared to cooperate and would have testified on defendant's behalf; and (5) the absence of such testimony prejudiced him and denied him a fair trial.

***Commonwealth v. Reid***, 99 A.3d 427, 438 (Pa. 2014) (quotation marks and citations omitted).

Gordon did not meet the procedural requirement nor the fourth and fifth substantive requirement. Gordon did not include a certification in any of his petitions or motions with the PCRA court regarding Santos' proposed

testimony, even after the PCRA court gave him an opportunity to correct the error. Gordon then did not call Santos as a witness at the PCRA hearing and relied exclusively on trial counsel's testimony. Without Santos' testimony, Gordon failed to prove that she was willing to testify on his behalf and that her testimony would have changed the outcome of trial. ***See id.***; ***see also Commonwealth v. Dennis***, 950 A.2d 945, 964 (Pa. 2008) ("we find Appellant has failed adequately to plead and prove his foundational claim of ineffective assistance of trial counsel with respect to putative alibi witnesses … because without their testimony Appellant cannot demonstrate prejudice sufficient to establish ineffectiveness of trial counsel.").

We further agree with the PCRA court that trial counsel had a reasonable basis for deciding to not call Santos as a witness. Attorney Reynolds explained at the PCRA hearing that he did subpoena Santos and she did appear for trial. ***See*** N.T. PCRA Hearing, 6/21/24, at 24. After talking with Santos and conferring with co-counsel Attorney Wismer, Attorney Reynolds decided not to call Santos as a witness because her statements were inconsistent. ***See id.*** at 25, 68-69. Attorney Reynolds felt the 911 call that Santos made just after the shooting was better for defense and was not subject to cross-examination. ***See id.*** at 25, 70-71, 73-74, 79, 81-85. Attorney Reynolds was able to keep any inconsistencies out of the record by not calling Santos as a witness. ***See id.*** at 84-85. As the PCRA court aptly found, Attorney Reynolds had a

reasonable basis for his decision not to call Santos as a witness at trial. This claim therefore does not entitle Gordon to relief.

Next, Gordon argues trial counsel was ineffective for failing to meaningfully cross-examine Commonwealth witness Shakeria Pinnock because he did not have the communications between the Commonwealth and Pinnock's immigration attorney. *See* Appellant's Brief, at 22-23. Gordon claims "[b]ecause counsel's examination of Pinnock was fundamentally compromised by the Commonwealth's failure to disclose material impeachment evidence, the PCRA court erred in denying relief on this claim." *Id.* at 23.

The Commonwealth submits that trial counsel was aware of Pinnock's immigration status and cross-examined her extensively about it during trial. *See* Appellee's Brief, at 30. Further, although trial counsel initially testified that he did not have all of the Pinnock communications, he did later acknowledge he must have had some of them because he cross-examined Pinnock on a letter from Captain Anthony Paparo regarding Pinnock's U-Visa application. *See id.* at 31. Finally, the Commonwealth asserts Gordon failed to establish prejudice because the Pinnock communications did not provide anything new that would have damaged Pinnock's trial testimony. *See id.* at 33. Furthermore, Pinnock was not the only eyewitness to identify Gordon as the shooter. *See id.* at 33-34. Two other independent eyewitnesses identified

Gordon as the shooter. ***See id.*** Gordon was therefore unable to establish

prejudice. ***See id.*** at 34-35.

> The PCRA court held:
>
> … According to trial counsel, although he may not have been in possession of a copy of [Pinnock's] U-Visa application, he was[,] as the material case record reveals[,] very much aware of Ms. Pinnock's immigration status issue. Armed with that information, … Gordon's trial attorney extensively questioned and repeatedly challenged Ms. Pinnock. [The PCRA] court's most recent review of the trial record just did not support a finding that defense counsel's cross-examination was constitutionally ineffective and/or otherwise actionably deficient.
>
> Being the capable and experienced criminal trial lawyer that he is, when presented at the collateral evidentiary hearing with a copy of the U-Visa application, nonetheless, [Attorney] Reynolds pointed out how he could have possibly bolstered his extensive trial efforts at impeaching Ms. Pinnock with some of the information that he recently [received] from PCRA counsel … . The glaring downside of the alleged newly acquired, previously undisclosed information was it showed that there was no *quid pro quo* agreement in exchange for Ms. Pinnock's trial testimony.
>
> Immediately after the murder victim, Randy Campbell, was shot and killed in 2011, Ms. Pinnock positively identified … Gordon as the shooter. At [Gordon's] trial, Ms. Pinnock's testimony was largely consistent with the information and statements she promptly gave to police. When she provided her statements and positive identification to law enforcement in 2011, Ms. Pinnock's 2014 U-Visa application was not even on the horizon. Furthermore, her U-Visa application was approved in August 2015, in advance of [Gordon's] October 2015 trial. Therefore, any "benefit" allegedly received by Ms. Pinnock clearly post-dated her initial statements to law enforcement and were unrelated to her trial testimony.
>
> \* \* \*
>
> Trial counsel's cross-examination clearly was designed, and most certainly did in fact further [Gordon's] interests. Under these circumstances, [the PCRA] court did not hesitate in concluding any

additional cross-examination of Ms. Pinnock that could have been conducted by use of the U-Visa application would have been largely cumulative and not of a higher degree and/or quality than that which had been [very ably undertaken] by … Gordon's attorney at trial … .

Any additional attempts at such further, modest impeachment do not rise to the requisite prejudice needed to obtain a PCRA remedy. Recognizing the compelling direct and circumstantial evidence proving … Gordon's guilt and given that trial counsel conducted a thorough and most competent cross-examination of this witness, [Gordon] utterly failed to prove that the trial would have had a different result had the actual U-Visa application document in questioning Ms. Pinnock also been employed.

PCRA Court Opinion, 10/20/25, at 67-70 (citation and record citations omitted).

We cannot find any error in the PCRA court's analysis. Our review of the trial and PCRA transcripts reveals that trial counsel spent considerable time cross-examining Pinnock on her immigration status. **See** N.T. Trial, 10/5/15, at 158-71, 173, 227-30. Trial counsel specifically asked Pinnock about the U-Visa during cross-examination: "A U-Visa, right? The same thing the government has given you in exchange for testifying in this case, correct?" *Id.* at 167. Seemingly, counsel even knew that the Commonwealth participated in reviewing her U-Visa application:

Q … Have you had the paperwork renewed a number of times by the Commonwealth, if you know?

A What paperwork? I don't understand.

Q The U-Visa paperwork?

*Id.* at 169.

- 16 -

At the PCRA hearing, trial counsel conceded that the later communications between the Commonwealth and Pinnock's immigration counsel, as well as the U-Visa applications obtained by PCRA counsel, "would've helped to build upon [his cross-examination of Pinnock at trial.]" N.T. PCRA Hearing, 6/21/24, at 14. However, trial counsel explained that he knew Pinnock's immigration attorney was Wayne Sachs and that she was pursuing a U-Visa prior to trial. *See id.* at 55, 57, 65. Further, he knew that the Commonwealth certified that Pinnock was a witness or victim on her U-Visa prior to trial; this information was brought out on direct examination. *See id.* at 59.

We cannot find prejudice considering the thorough cross-examination and the minor potential additions this evidence would have provided to the defense. As the PCRA court cogently found, because Gordon was identified by two other eyewitnesses as the shooter, and the additional evidence did not contradict anything that Pinnock said at trial, even if a more thorough cross-examination were completed, "[Gordon] failed to prove that the trial would have had a different result[.]" PCRA Court Opinion, 10/20/25, at 70. This claim therefore does not merit relief.

Gordon's last two claims allege a violation of the dictates of *Brady* and its progeny. We begin with the standards surrounding a *Brady* claim:

> It is well-settled that *Brady* and subsequent precedent flowing therefrom impose upon a prosecutor the obligation to disclose all favorable evidence that is material to the guilt or punishment of

an accused, even in the absence of a specific request by the accused. This Court has held that, to establish a *Brady* violation, a defendant has the burden to prove that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the prosecution has suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material, meaning that prejudice must have ensued.

Under *Brady*, prejudice occurs when a defendant shows a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability does not mean that the defendant would more likely than not have received a different verdict with the evidence; it means only that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial. This Court has held that, as a matter of law, a court reviewing multiple pieces of exculpatory evidence that the prosecution failed to disclose is required to view the effect of the non-disclosures cumulatively.

The *Brady* obligation extends to information that may be used to impeach prosecution witnesses. Any implication, promise or understanding that the government would extend leniency in exchange for a witness' testimony is relevant to the witness' credibility. However, *Brady* is not violated when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from other sources. In order to be entitled to a new trial for failure to disclose evidence affecting a witness' credibility, the defendant must demonstrate that the reliability of the witness may well be determinative of his guilt or innocence.

*Johnson*, 353 A.3d 609, 631-32 (Pa. 2026) (citations, quotation marks, and footnotes omitted).

Gordon first asserts the Commonwealth violated *Brady* by failing to disclose the identity of an eyewitness who told police the shooter dropped a red hat. *See* Appellant's Brief, at 26. Gordon next claims the Commonwealth

suppressed the U-Visa application and communications between it and Pinnock's immigration attorney. *See id.* at 27. Both claims were dismissed without a hearing below, and Gordon claims this was error because he "presented colorable *Brady* claims … [that] require[] credibility determinations and factual development beyond the existing record." *Id.* at 28-29.

The Commonwealth argues both claims are waived because Gordon knew about both the fact that the Commonwealth certified Pinnock's U-Visa application and the lack of identification of who pointed out the red hat to police prior to trial. *See* Appellee's Brief, at 35-36. Because neither of these claims were raised prior to or at trial, the Commonwealth submits they are now waived. *See id.* at 36, 38.

Alternatively, the Commonwealth asserts it did not withhold or suppress any evidence regarding the red hat. *See id.* at 39. Prior to trial, it turned over all police reports regarding the red hat. *See id.* During the PCRA proceedings, the PCRA court ordered the Commonwealth to search for and provide any further evidence regarding the unidentified individual who told police about the red hat. *See id.* None was found because police never did obtain the identity of that person. *See id.* at 39-40. Therefore, no evidence was suppressed or withheld. Gordon did not present any evidence that was contrary to the Commonwealth's response.

As to the U-Visa documents, the Commonwealth also submits that it did not suppress or withhold any evidence because the trial transcript makes it clear that trial counsel had at least one letter regarding the U-Visa. ***See id.*** at 40. Further, even if we were to assume the documents were suppressed, the Commonwealth asserts the documents are not material. ***See id.*** This is because trial counsel extensively cross-examined Pinnock regarding her immigration status and because Pinnock was only one of three people who identified Gordon as the shooter. ***See id.*** at 41.

Since Gordon failed to establish any genuine issue of material fact, the Commonwealth states that the trial court did not err in declining to hold an evidentiary hearing on these claims. ***See id.*** Further, Gordon was given two opportunities to address these claims—Gordon was permitted to introduce the U-Visa documents to trial counsel at the evidentiary hearing and question him about them, and the PCRA court scheduled oral argument to allow Gordon to argue as to why he believed he was entitled to a further evidentiary hearing. ***See id.*** at 41-42.

The PCRA court found the claims both waived and without merit:

Before trial, at the time of trial, upon the imposition of sentence in the at bar matter on December 4, 2015, and thereafter, [Gordon] did not raise any challenge grounded on purported due process violations based on prosecutorial misconduct and/or an alleged ***Brady*** violation, despite already then having the information necessary to advance these claims. No new information has been averred and/or it is merely cumulative to what was already in the defense's possession at the time of trial and subsequent. These collateral attacks as a present basis for PCRA relief were therefore arguably waived.

\*\*\*

... Gordon's first **Brady** claim is the prosecution failed to disclose the name of the witness who told Upper Darby Police Sergeant Anthony Vaughn that a red baseball cap in the parking lot near the crime scene was dropped by the shooter. The red cap was ultimately tested for DNA, and [Gordon's] DNA was excluded as a contributor to the DNA profile on the hat. The parties stipulated to this exculpatory DNA evidence, and it was unquestionably part of the evidence presented at trial for the court's factfinding consideration.

What can charitably be described as reasoned speculation, … Gordon hypothesized that law enforcement in fact obtained the name of the person who said she or he saw this shooter drop the red hat and that the prosecution failed to share that information with the defense.

At trial, none of the law enforcement witnesses were asked about the identity of this supposed witness or whether the police in fact had any knowledge of the person's identity. [Gordon] candidly acknowledged " … that this **Brady** claim is different than most." However, there is simply no substantive basis to believe the prosecution suppressed the identity of this witness and/or that such information would be exculpatory.

\*\*\*

[The PCRA] court relatedly observes that statements from PCRA counsel are not sufficient to warrant an evidentiary hearing. A PCRA petitioner must prove[,] by reference to the record, that evidence was withheld or suppressed by the prosecution. Without properly proffered, producible, and admissible evidence, there simply was no basis or reason for holding an evidentiary hearing on this issue.

\*\*\*

Finally, … Gordon contends that the prosecution contravened due process by not disclosing consideration offered to Shakeria Pinnock, who was just one of the three (3) identification witnesses at [Gordon's] trial.

> The consideration referenced in [Gordon's] petition and attachment, and any pressure brought to bear by the police for Ms. Pinnock to mold her testimony was most extensively [examined] at trial … . There is here just nothing new. Ms. Pinnock during the trial was effectively and comprehensively questioned about her immigration and U-Visa status, and the alleged conversation referenced in [Gordon's] attached certification … .
>
> ***
>
> … Gordon failed to establish that had the prosecution delivered the information to the defense pretrial, there was a reasonable probability that its production would have caused a different trial outcome. …

PCRA Court Opinion, 10/20/25, at 74-82 (citations, some quotation marks, and record citations omitted).

Gordon has failed to convince us that the PCRA court committed an error of law or abused its discretion. Prior to trial, Gordon's trial counsel was aware that Pinnock was seeking a U-Visa, who her immigration attorney was, and that the Commonwealth certified she was a witness or victim on her U-Visa application. *See* N.T. PCRA Hearing, 6/21/24, at 57-59. Further, Gordon's trial counsel was well-aware of the red hat, its exculpatory value, and the fact that police did not identify who said the shooter dropped the red hat prior to trial. *See* N.T. Trial, 10/7/15, at 148-49. Gordon could have proceeded with these alleged *Brady* violations prior to or during trial and failed to do so. "Significantly, *Brady* claims are subject to waiver." *Commonwealth v. Holt*, 273 A.3d 514, 534 (Pa. 2022). Where a *Brady* claim could have been raised at trial or on direct appeal, but was not, the claim is waived on collateral review. *See id.*; *see also Commonwealth v. Hannibal*, 156 A.3d 197, 210

(Pa. 2016) (finding **Brady** claim waived because it could have been raised at trial or on direct appeal).

Gordon could have raised these two **Brady** claims at trial. He failed to do so. Gordon does not even attempt to refute the PCRA court's decision that these claims are waived in his brief to this Court. **See** Appellant's Brief, at 23-29. We therefore find these claims waived.

Even if we were not to find waiver, we would agree with the PCRA court that these claims do not merit relief. Gordon simply has not presented any evidence that the Commonwealth suppressed or withheld the identity of the person who informed police that the shooter dropped the red hat. Further, trial counsel extensively cross-examined Pinnock on her immigration status and she was only one of three eyewitnesses who identified Gordon as the shooter. Gordon therefore failed to establish this evidence was suppressed or withheld, and resulting prejudice.

Based upon the foregoing reasons, we affirm the order of the PCRA court dismissing Gordon's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/1/2026